## William H. Stow, Plaintiff in Error, *v.* The People, Defendants in Error.

### ERROR TO THE RECORDER'S COURT OF CHICAGO.

The proviso of the first section of the fifth article of the constitution, in reference to inferior courts, applies to cases where several courts are established in the same city. It does not require that all the inferior courts in all the cities possessing them should have the same organization and jurisdiction, but that the several courts, in cities having more than one, should each be similar in organization and jurisdiction to those of their own class.

Secondary evidence of the contents of a deed cannot be admitted, until a sufficient foundation has been laid by proof of such a search for the original, as would raise a presumption of its loss or destruction.

The statute does not make the record of a deed evidence of its contents, without proof that it is a true copy.

The indictment in this case does not charge the offense under the 151st section of the criminal code.

THIS was an action by the People against plaintiff in error, under the 151st section of the criminal code. The indictment was as follows :

The grand jury, etc., present William H. Stow, late, etc., on, the 12th day of July, 1859, in said city, etc., designing and intending to cheat one Charles Walker, then and there being the owner and seized in fee simple of lots fifteen and twenty-one, in block sixty-two, in School Section Addition to Chicago, was then and there unlawfully a party to a certain fraudulent conveyance of said lots, which said fraudulent conveyance, so far as the jurors can set it forth, (the original not being in their possession), is as follows :

This indenture, made the twelfth day of July, 1858, between W. H. Stow, of Chicago, etc., and George I. Stow, of New York, witnesseth, that the said party of the first part, for and in consideration of the sum of Five Hundred Dollars, in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, and the said party of the second part forever released and discharged therefrom, hath remised, released, sold, conveyed and quit claimed, and hereby doth, etc., all the right, title, interest, claim and demand, which said party of the first part hath in and to the following described lot, piece or parcel of land, to wit, lot number fifteen and twenty-one, block sixty-two, School Section Addition to Chicago. To have and to hold, etc., forever.

In witness whereof, etc.　　　　　W. H. STOW. [SEAL.]

Indorsement of record, 31st July, 1858. W. L. Church, Recorder.

Acknowledgment before John Summerfield, a notary public, in and for city of Chicago, etc. Dated 29th July, 1860.

And so the grand jurors, chosen, etc., do say, that the said William H. Stow, late of said city, on the said 12th day of July, 1858, at, etc., was then and there unlawfully and fraudulently a party to a fraudulent conveyance of the aforesaid lots fifteen and twenty-one, to wit, the fraudulent conveyance aforesaid, made and contrived to deceive and defraud the said Charles Walker, contrary to the statute, etc.

CARLOS HAVEN,
*State's Attorney.*

Indorsed, a true bill.

J. H. GRAY,
*Foreman of the Grand Jury.*

Filed August 6, 1859.

JOS. K. C. FORREST,
*Clerk.*

Arraignment. Plea, not guilty.

Jury called, chosen and sworn. Trial. Verdict of the jury, guilty.

Motion for a new trial. Motion in arrest of judgment. Both overruled by the court. Exception by defendant.

Judgment: Therefore it is ordered and adjudged by the court, the said defendant, William H. Stow, be fined the sum of one thousand dollars, and pay the cost of these proceedings, and that he further stand committed until the fine and costs are paid, and that he be thereafter discharged.

The only portion of the testimony which it is necessary to notice here, was as follows:

During the trial, the prosecuting attorney called on defendant to produce deed from him to George I. Stow, under the following notice, viz.:

" W. H. Stow : You will please produce the several deeds mentioned in the indictment against you, and upon which the charge of fraud is made, or the People will give secondary evidence of their contents     Carlos Haven."

Which notice, it was agreed, was only given and received at the opening of the court on the afternoon of the day on which the trial began.

Defendant did not produce the deed.

Whereupon the prosecution offered in evidence the record of a supposed deed, dated July 12, 1858, from W. H. Stow to George I. Stow, of Dunkirk, New York; recited consideration, $500 ; conveys and quit-claims W. H. Stow's title and interest in premises in question; signature and acknowledgment before notary public, dated July 29, 1858.

Objection to the evidence; had not taken proper steps to procure the original. Objection was overruled, and the record was read in evidence. Defendant excepted.

Witness Walker stated that he fenced in the lots in 1859, in the spring. Never had seen the deed last mentioned, and had not the original in his possession. This was all the evidence in reference to this deed.

A. W. Windett, and W. T. Burgess, for Plaintiff in Error.

W. Bushnell, for Defendant in Error.

Caton, C. J. The first question we propose to consider, is that of the jurisdiction of the court before which the prisoner was convicted. This question we shall determine solely upon the construction of the proviso of the first section of the fifth article of the constitution, without particular reference to the

different acts of the legislature, by which it is supposed that the court has been deprived of jurisdiction.

That proviso is this: " *Provided,* that inferior local courts of civil and criminal jurisdiction may be established, by the general assemblies, in the cities of this State, but such courts shall have a uniform organization and jurisdiction in such cities." We were first called upon to consider this provision of the constitution, in reference to this very court, in the case of *Perry* v. *The People,* 14 Ill. 496. The objection, and the only objection then raised to the court, was, that the legislature had established one court in one city of the State only; whereas it was, by this clause of the constitution, required, when it attempted to exercise the power here conferred, to legislate for all the cities alike, and establish the same court, or courts, in each of the cities within the limits of the State. It was objected, and only objected, as this had not been done, and but one city had been provided with a court, that it was not authorized by the constitution. This, we say, was the only question presented by the record, and the only one the court was called upon to decide. That was decided by the court, and it was held that the legislature might establish courts in such cities alone, as the public exigencies in its judgment might require.

It is true that the court, in its opinion, went beyond the case before it, and in anticipation of the future, made an admonitory remark, which contains an intimation, that all the courts in all the cities, which should be established, must have a uniform organization and jurisdiction. It is this: " The ' uniformity of organization and jurisdiction ' has respect to the courts and not to the cities as its antecedent. As these courts may be extended, care will be taken to introduce into other cities, one of a ' uniform' character of ' organization and jurisdiction;' as the power is restricted and confined to such character as shall produce uniformity in the mode of organization and extent of jurisdiction." The remark was undoubtedly true and pertinent, that the uniformity of organization and jurisdiction, has respect to the courts and not to the cities; but it was not necessary to say how far that uniformity was required to extend. It was sufficient that the uniformity enjoined did not refer to cities, and that the General Assembly might legislate for one city and not for another.

When the constitution was formed, it was easy to appreciate that the wants of the different cities of the State might be very variant, so that some might require city courts and others not; and it is equally obvious that the wants of one city may require one kind of a court, and those of another, another kind. It can hardly be presumed that the convention which framed the

constitution could not appreciate and be impressed with the fact, that a court, to meet the wants of a city of one hundred thousand inhabitants, with its vast commercial transactions, should have a greater jurisdiction than for a city of but five thousand inhabitants. The truth is, they did appreciate this, and more, for they foresaw that the time might come when some of the cities of the State might require more than one city court, and provided for this contingency by authorizing, by this very clause of the constitution, the establishment of several courts in each city.

The power to establish these courts is general, and without any restriction as to number, and the restriction which is provided as to uniformity of organization and jurisdiction, applies to cases where several courts are established in the same city. In such a case, we can appreciate a propriety in requiring that they should be organized alike, and each vested with the same jurisdiction. We ought not to impute to the convention, unless compelled to do so, the supposition that all cities requiring judicial facilities, no matter what their size or commerce, would need the same facilities, would require courts of the same organization and jurisdiction. But the language of this proviso, so far from compelling such a construction, absolutely constrains a different construction, and one precisely adapted to meet the various wants of the different cities of the State. The language is : "Such courts shall have a uniform organization and jurisdiction *in such cities.*" If the design was to require all the courts in all the cities of the State to have a uniform organization and jurisdiction, the last three words were worse than useless. The words previously employed were as general as they well could be, and possibly would require the construction now contended for ; and seeing this, the others were added with an evident design of restricting the general terms previously employed. They could only have been inserted in a restricted sense, unless they were designed to enlarge the words previously employed, and that cannot be pretended, for those words were of themselves of the most enlarged and comprehensive character, which might well require restriction to prevent misconstruction. That these words were inserted for a purpose, all rules of construction require us to presume, for we must not say that they were inserted by the convention idly and without a purpose. We must then assign them the only office which they can perform, and that is, to restrict the broad expressions previously used, and hold that the uniformity required was among the several city courts which might be established in any given city, whose wants might require more than one city court. This answers the objection that since the organization of this court, with juris

diction to try this offense, other courts have been established in other cities with more limited jurisdiction, not embracing this case.

There are several other errors assigned, only a part of which we shall notice. The court erred, in admitting the original record of the deed from the prisoner to George I. Stow. In the first place, no sufficient foundation was laid for the introduction of secondary evidence of the contents of that deed. The presumption is that it was in the hands of the grantee, or in the recorder's office, where the evidence left it. Search should have been made for it in both places, before any presumption could arise that it was lost or destroyed. Again, we have decided that the statute does not make the record of the deed evidence of its contents, without proof that it was a true copy. No such proof was given.

But it is unnecessary to pursue further the minor errors assigned, as we are satisfied the indictment does not charge an offense under the 151st section of the criminal code, under which it was framed, nor does the proof make out a case under that section. The case made comes nearer meeting a case under the 154th section.

The judgment is reversed, and the prisoner discharged.

*Judgment reversed.*